WESTERN UNION TELEGRAPH CO. v. McCORMICK. (No. 1069.)

(Court of Civil Appeals of Texas. El Paso. Feb. 26, 1920. Rehearing Denied March 11, 1920.)

1. TELEGRAPHS AND TELEPHONES ☞73(5)—
DAMAGES FOR MENTAL SUFFERING BY DELAY OF DEATH MESSAGE QUESTION FOR JURY.

In an action by the addressee for delay of delivery of a message announcing his mother's last illness, where he testified to his grief, the question of damages from his grief was for the jury, though he also testified to his anger and disappointment.

2. TELEGRAPHS AND TELEPHONES ☞37(2)—
DELIVERY TO PERSON IN WHOSE CARE MESSAGE WAS SENT INSUFFICIENT.

Where telegraph company received a message announcing the fatal illness of the addressee's mother under a special contract for delivery to the addressee personally, delivery to the company in whose care the message was sent was insufficient; it appearing that the addition was merely for the convenience of the telegraph company.

3. TELEGRAPHS AND TELEPHONES ☞66(2)—
SERVICE MESSAGES INQUIRING AS TO DELIVERY OF DEATH MESSAGE ADMISSIBLE IN EVIDENCE.

In action by the addressee for failure to seasonably deliver a message, replies to service messages sent by the receiving office to the point of delivery inquiring as to delivery were admissible in evidence.

4. TELEGRAPHS AND TELEPHONES ☞73(1)—
DELAY IN DELIVERY OF DEATH MESSAGE QUESTION FOR JURY.

In an action for failure to seasonably deliver a message, the question whether delivery was made as claimed by the telegraph company or not held, under the evidence, for the jury.

5. TELEGRAPHS AND TELEPHONES ☞65(2)—
PETITION SUFFICIENT TO SHOW DAMAGE FROM DELAY IN DELIVERY OF DEATH MESSAGE.

In an action by the addressee for failure to seasonably deliver a message announcing the fatal illness of his mother, allegations that in the usual and customary routes of travel the addressee, had the message been promptly delivered, could have reached his mother in time to have found her rational, are sufficient.

6. TRIAL ☞48—EXCLUSION OF PARTLY ADMISSIBLE EVIDENCE OFFERED AS A WHOLE NOT ERROR.

Where evidence, part of which was inadmissible and part admissible, was offered as a whole, the exclusion of the whole was not error.

7. TELEGRAPHS AND TELEPHONES ☞66(3)—
CONVERSATION BETWEEN AGENTS AS TO DELIVERY INADMISSIBLE.

Where, in response to a service message inquiring as to the delivery of a message, the receiving office was informed that the message had not been delivered, the agent of the office where delivery was to be made, while entitled to testify that he did not send the reply, cannot give a conversation he had with the operator whom he claimed sent the reply.

8. TRIAL ☞232(2)—GENERAL INSTRUCTIONS SHOULD BE REFUSED WHERE CASE IS SUBMITTED ON SPECIAL ISSUES.

Where a case is submitted on special issues, a general charge to find for or against a party is not proper.

9. TELEGRAPHS AND TELEPHONES ☞74(1)—
MODIFICATIONS OF CHARGES ERRONEOUS AS IMPOSING GREATER DUTY THAN LAW REQUIRES.

Modifications of charges permitting a verdict for defendant telegraph company if it exercised ordinary care in delivering message by adding "unless it was received and transmitted

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under special contract" were erroneous as imposing a greater duty than the law requires.

Appeal from District Court, Dawson County; W. R. Spencer, Judge.

Action by C. H. McCormick against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Francis R. Stark, of New York City, and Veale & Lumpkin, of Amarillo, for appellant.

McGuire & Warren, of Lamesa, for appellee.

HIGGINS, J. Appellee brought this suit against appellant to recover damages for mental anguish suffered by him on account of the alleged failure to transmit and deliver a telegraphic message sent from Lamesa, Tex., to him at Ranger, Tex., reading as follows:

"To C. H. McCormick, Ranger, Texas, % Texas & Pacific Coal Co. Come at once your mother very low. Answer. T. W. Key."

The message was delivered to appellant by the sender, Key, about 2 o'clock p. m. March 19, 1918. Appellee's mother was quite old, and at the time was seriously ill and unconscious, and so remained until the morning of March 21, 1918, when, for a short period of time, she became conscious and rational, afterwards relapsing again into unconsciousness, and so remained until April 12, 1918, when she died.

Plaintiff in his petition alleged that on March 19, 1918, his mother was at Lamesa very ill and not expected to live, and plaintiff was at Ranger; that on said date the message aforesaid was delivered to defendant at Lamesa by T. W. Key, the sender and plaintiff's agent; that at the time the message was delivered to defendant Key notified defendant that it was desired the telegram be delivered in person to appellee, and the sending of same in care of the Texas & Pacific Coal Company was merely for the purpose of assisting defendant in locating appellee and delivering the telegram to him in person and Key then further informed defendant that he would then pay to it the necessary required fee, if any, for delivery by defendant in person to McCormick; that defendant then informed Key that it could not arrive at the exact amount necessary to make such delivery, but, if Key would guarantee the payment of as much as $40, it would undertake to insure the use of ordinary care in making the delivery in person of the telegram to appellee, and Key did then and there guaranty the payment of said sum of money, or so much thereof as was necessary for such delivery.

It was then alleged that no delivery of the message was made to him nor to the Texas & Pacific Coal Company, and that, if ordinary care had been used by defendant, he would have received the telegram in time to have reached his mother's bedside while she was conscious and rational; that he had suffered mental anguish and distress in being deprived of seeing and conversing with his mother while she was conscious and rational and able to know and recognize him, and thereby damaged in the sum of $1,950, for which he sought judgment.

The defendant answered by general denial and special plea, alleging delivery to the coal company on the afternoon of the date of the message and within a reasonable time. Other special pleas made by it need not be stated.

The case was tried before a jury and submitted upon special issues. The issues submitted and the jury's findings are given as follows:

"Mental anguish is that keen and poignant suffering which results from some great grief.

"Proximate cause means a cause without which the injury would not have occurred, and from which it could have been reasonable anticipated injury would result as a natural and probable consequence.

"Ordinary care is such care as a person of ordinary prudence and caution would exercise under the same or similar circumstances.

"Bearing in mind the foregoing definitions, this case is submitted to you upon the following special issues:

"Special issue No. 1: Did the agent of the defendant, Western Union Telegraph Company, at Lamesa, Tex., on the 19th day of March, 1918, agree with T. W. Key, in consideration of the guaranty of the payment by said Key of an amount not exceeding $40, that the defendant would deliver the telegram in question to the plaintiff, C. H. McCormick, in person? Answer: Yes.

"Special issue No. 2: Did the defendant, Western Union Telegraph Company, use and exercise ordinary care in making the delivery of said telegram to the plaintiff, C. H. McCormick? Answer: No.

"Special issue No. 3: Was the telegram in question ever delivered to the plaintiff, C. H. McCormick? Answer: No.

"Special issue No. 4: Was the telegram in question ever delivered to Mr. Hewitt, the timekeeper of the Texas & Pacific Coal Company? Answer: No.

"Special issue No. 5: Was the plaintiff, C. H. McCormick, on the 19th and 20th days of March, 1918, in the town of Ranger, Tex.? Answer: Yes.

"Special issue No. 6: Could the defendant, Western Union Telegraph Company, by the exercise of ordinary care, have delivered the said telegram to the plaintiff, C. H. McCormick, on the afternoon or early in the night of March 19, 1918? Answer: Yes.

"Special issue No. 7: Could the plaintiff, C. H. McCormick, have left Ranger, Tex., late in the night of March 19th, and have reached his mother's bedside before the morning of March 21, 1918? Answer: Yes.

"Special issue No. 8: Was the plaintiff's mother rational and able to recognize and converse with him after he reached his home in Lamesa? Answer: No.

"Special issue No. 9: Has the plaintiff suffered any damages by reason of mental anguish, as hereinbefore defined, in not being at his mother's bedside while she was rational, if she was rational, on Thursday morning, March 21, 1918? Answer: Yes.

"Special issue No. 10: Was the failure, if any, of the defendant, Western Union Telegraph Company, to deliver said telegram, if you have found that they failed to deliver said telegram, and could have done so by use of ordinary care, as hereinbefore defined, the proximate cause of plaintiff's mental anguish, if any? Answer: Yes.

"Special issue No. 11: Would plaintiff have left Ranger for his mother's bedside on the night of March 19th in time to have reached there and been with her while she was rational, if the telegram in question had been delivered to him in the evening or early night of March 19th? Answer: Yes."

Some special charges given by the court will be later indicated. Special issue No. 12 related to the issue of damages, and in response thereto the jury assessed the damages at $1,000.

## Opinion.

[1.] Complaint is first made of the refusal of a peremptory instruction in favor of the defendant; the first contention in this connection being that under the evidence it appears appellee suffered no mental anguish, but was merely disappointed, angered, and resentful towards appellant because of the nondelivery of the message. Mere disappointment, anger, and resentment over the nondelivery of the message would form no basis of recovery, but we do not construe the appellee's testimony as showing emotions of this nature only. It is true he testified he did feel disappointed, angered, and resentful over the nondelivery of the message, but he further testified:

"If I had gotten to Lamesa on March 20th, I would have been present on the 21st, when my mother was rational, and the fact that I was not here at that time caused me grief."

This testimony shows that he was grieved, and the fact that he may also have been disappointed, angered, and resentful, would not preclude him from recovering damages for the mental anguish incident to the grief testified to by him. The court's charge defined mental anguish in a manner which is not excepted to by the appellant. Furthermore, at the request of the appellant a special charge was given whereby the jury was instructed that mere disappointment, anger, worry, mental distress, or injury of the feelings did not constitute mental anguish as that term was used in the general charge. The definition given in the general charge and this special instruction completely guarded against any conception arising in the mind of the jury that disappointment, anger, and resentment could be construed as men-

tal anguish, and, as indicated above, the appellee testified to his grief, and the amount of damage arising from this grief was a proper matter for submission to the jury.

[2] It is further insisted the peremptory instruction should have been given because the evidence discloses that the message was delivered to the Texas & Pacific Coal Company within a reasonable time after it reached Ranger, and, since the message was sent in care of said company, no recovery could be had. This is overruled because it was pleaded, proven, and found by the jury that there was a special contract made to deliver the telegram to the sendee in person. The pleading and the testimony shows that the message was sent in care of the Texas & Pacific Coal Company simply for the purpose of facilitating the delivery by appellant to the sendee in person, and under such circumstances delivery to the person in whose care the message is sent is not sufficient. Telegraph Co. v. Bryant, 35 Tex. Civ. App. 442, 80 S. W. 406.

[3, 4] This contention must be overruled for the further reason that it was an issue of fact whether delivery was in fact made to the Texas & Pacific Coal Company. A Mr. Hewitt was the timekeeper of the company at Ranger and the person who received for the company its telegrams. Hewitt testified that the telegram in question was delivered to him by Mr. Blitch, appellant's agent at Ranger, on March 19, 1918, and that he in turn delivered the message the next morning to Mr. McCormick. The agent, Blitch, also testified that he delivered the telegram to Mr. Hewitt about 4 o'clock on the afternoon of the 19th. On the other hand, Mr. Key, the sender of the message, testified that they were expecting the arrival of Mr. McCormick by the noon train on the 20th; that upon his failure to arrive on that date, and on the 21st, he went down to see the agent at Lamesa to find out whether the message had been delivered; that the agent said he would find out what they had done with it, and in response to his inquiry about the matter the appellant's agent at Lamesa gave him the following service messages:

First. A service message dated 3/21/18, signed by the agent at Lamesa, reading: "Ranger, Texas. Rd ours 19th, McCormick Sgd. Key."

Second. Another service message dated 3/21/18, signed by the agent at Lamesa, reading: "Ranger, Texas. See our service date, report delivery ours 19th, McCormick sgd. Key, second request—RUSH."

Third. A service message dated 3/22/18, from Ranger, Tex., to Lamesa, reading as follows: "Lamesa, Tex. Yours 19th McCormick on hand cannot locate party."

Now, according to the service message sent on the 22d from Ranger to Lamesa, the telegram of Key to McCormick was still on

hand by appellant, because McCormick could not be located. These service messages were admissible, and the reply of the Ranger office was evidence of the fact that the message was still on hand and had never been delivered. Tel. Co. v. Bennett, 1 Tex. Civ. App. 558, 21 S. W. 699; Tel. Co. v. McMillan, 25 S. W. 821; Tel. Co. v. Cooper, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772.

Notwithstanding the testimony of Hewitt and Blitch concerning delivery, these service messages rebutted their testimony and raised an issue of fact as to delivery which it was necessary to submit to the jury.

What has been said disposed also of the second, third, fourth, fifth, and sixth assignments.

[5] Appellant excepted to appellee's petition on the ground that it does not appear, if plaintiff had received the telegram promptly, where, how, and what modes of transportation he would have used in going from Ranger to Lamesa. The petition alleged that, if he had received the message in time he would have arrived at his mother's bedside by the usual and customary routes of travel. This allegation was sufficient. The usual and customary routes of travel was a sufficiently specific allegation.

The seventh and eighth assignments both relate to the alleged insufficiency of the petition in the respect just indicated and under the views expressed we regard them as without merit and overrule same.

The ninth and tenth assignments complain of the admission of the evidence of Key relating to the circumstances under which the service messages were sent and the admission of the service messages. Key's conversation with the appellant's agent at Lamesa and the service messages given by said agent to Key were properly admissible in evidence. See cases last above cited.

[6, 7] Blitch, appellant's agent at Ranger, testified that he remembered the service message coming to Ranger, and it is a rule of the company to report nondelivery, but not delivery. The service message dated the 22d was sent by one of the operators and came when he was at supper. Whereupon witness was asked the question, "Did you send this reply?" referring to the service message dated March 22d, to which the witness answered, "No, sir; but when I got back from supper it was on the hook and I said to the operator, 'You have played the devil; that message has been delivered a day or two ago, and I guess the man is at home;' and he says, 'Well, it won't do any harm.'" Whereupon the plaintiff objected and asked that the testimony be stricken out upon the ground because he had testified he had delivered the message, and what the witness said to the operator at Ranger was immaterial, and not binding upon the plaintiff, which objection the court sustained.

219 S.W.—18

The action of the court in excluding this testimony is made the basis of the eleventh assignment. In this there was no error. The conversation which took place between Blitch and the operator was inadmissible. That part of the testimony of Blitch to the effect that he did not send the reply to the service message was admissible, but the plaintiff offered the testimony as a whole and is here complaining of its exclusion as a whole. He has no right to couple inadmissible evidence with admissible evidence and insist upon its admission, and its exclusion presents no reversible error. Hill v. Taylor, 77 Tex. 295, 14 S. W. 366; Cole v. Horton, 61 S. W. 503.

[8] Error is assigned to the refusal of the following charge requested by appellant:

"You are instructed that telegraph companies are not insurers of the safety and speedy transmission and delivery of telegraphic messages filed with them for transmission and delivery, but that in law they are only required to exercise ordinary care in safely and seasonably transmitting such messages, and if you find and believe from the evidence that the defendant company through its agents and servants exercised ordinary care in transmitting and delivering to the plaintiff, or to the Texas & Pacific Coal Company, the message in question, and its failure, if it did fail to do so, was not brought about or procured by the failure to exercise ordinary care, then your verdict must be for the defendant."

A general charge of this nature to find for or against a party is not proper in a case submitted upon special issues. Cole v. Crawford, 69 Tex. 124, 5 S. W. 646; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Id., 93 S. W. 1007; Railway Co. v. Jones, 175 S. W. 488; LaGrone v. Railway Co., 189 S. W. 99; Southern Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Pacific Express Co. v. Rudman, 145 S. W. 268; Hengy v. Hengy, 151 S. W. 1127; Southerland v. Railway Co., 40 S. W. 193; Crosby v. Stevens, 184 S. W. 705.

[9] Appellant requested special charge No. 5, as follows:

"You are instructed that telegraph companies are not insurers of the safety and speedy transmission and delivery of telegraphic messages filed with them for transmission and delivery, but that in law they are only required to exercise ordinary care in safely and seasonably transmitting such messages, and if you find and believe from the evidence that the defendant company through its agents and servants exercised ordinary care in transmitting and delivering to the plaintiff, or to the Texas & Pacific Coal Company, the message in question and its failure, if it did fail to do so, was not brought about or procured by the failure to exercise ordinary care, then your verdict must be for the defendant."

It also requested the submission of special charge No. 7, as follows:

"You are instructed that it was the duty of the defendant company to use ordinary care

in delivering said message to plaintiff or to the Texas & Pacific Coal Company, when it was received at Ranger, and that, if the defendant used such care and delivered said message to an agent of the Texas & Pacific Coal Company, then you are instructed to return a verdict in this cause for the defendant, although you may find and believe from the evidence that the plaintiff did not receive said message for some time afterwards."

The trial court modified each of these charges by adding to same, "unless you find from the evidence that said message was received and transmitted under a special contract as submitted in special issue No. 1."

The thirteenth and fourteenth assignments complain of the modification and giving of the charges upon the ground that the charges as qualified by the court imposed upon the defendant a greater duty than the exercise of ordinary care in making delivery.

The case having been submitted upon special issues, the charges requested by appellant should have been refused, as in effect they are general instructions to find for defendant if certain facts are believed to be true by the jury. See authorities last above cited. But, if the court saw fit to grant any requested general instructions of this nature, he should not have made any modifications which would impose upon appellant a greater duty than the exercise of ordinary care in making delivery.

The modification made by the court is subject to this objection. The thirteenth and fourteenth assignments are sustained.

In view of the reversal upon the ground indicated, it becomes unnecessary to pass upon the remaining assignments.

Reversed and remanded.