**WESTERN UNION TELEGRAPH CO. v COLEMAN. (No. 11536.)**

(Court of Civil Appeals of Texas. Fort Worth. March 27, 1926.)

**1. Telegraphs and telephones ⬛➡74(5)—Instruction on damages for suffering of mind and body as result of failure to deliver message held incorrect as requiring suffering of body.**

Requested instruction that jury must find that plaintiff suffered intense pain and suffering of mind and body as a direct result of telegraph company's failure to deliver message announcing serious illness within reasonable time *held* incorrect as requiring a suffering of the

body, bodily injury not being essential to right of recovery.

**2. Trial ⬛➡261—Requested instruction on "mental anguish," though incorrect in requiring bodily suffering, held sufficient to direct court's attention to subject, and require him to give explanation thereof "mental anguish" (citing Words and Phrases, Second Series, Mental Anguish).**

In action against telegraph company for mental anguish for failure to deliver telegram promptly, instruction defining "mental anguish," though incorrect in requiring bodily suffering, *held* sufficient to call court's attention to subject requiring him to give an explanation thereof, "mental anguish" being defined as a high degree of mental suffering and not mere disappointment or regret (citing Words and Phrases, Second Series, Mental Auguish).

**3. Telegraphs and telephones ⬛➡68(1)—To authorize damages for mental anguish from failure to deliver telegram, there must be keen suffering of mind, exclusive of mere disappointment, anger, worry, or mental disturbance.**

To authorize imposition of damages for mental anguish arising from negligent failure to deliver telegram, there must have been some keen and poignant suffering of mind, exclusive of mere disappointment, worry, anger, or mental disturbance which in ordinary and natural sequence of events results from negligence charged.

**4. Telegraphs and telephones ⬛➡74(5)—Instruction as to character of mental anguish authorizing damages for failure to deliver telegram held erroneous.**

In action against telegraph company for mental anguish, for failure to deliver telegram promptly, court erred in not instructing jury as to necessary character of grief or mental pain authorizing an award for mental anguish, and that mental anguish found must be such as resulted in natural and orderly sequence from negligence found.

**5. Negligence ⬛➡56(1)—"Proximate cause" is that which produced event complained of, and without which event could not have occurred.**

A "proximate cause" is that which, in natural and continuous sequence, unbroken by any new, independent cause, produced event complained of, and without which event could not have occurred.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit by W. T. Coleman against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

See, also, 284 S. W. 278.

Shropshire & Bankhead, of Weatherford, for appellant.

Hood & Shadle, of Weatherford, for appellee.

---

CONNER, C. J. This suit was instituted by W. T. Coleman to recover damages from the Western Union Telegraph Company for the sum of $1,500. The case was tried before the court and jury on the 1st day of May, 1925, and resulted in a verdict and judgment for the plaintiff, W. T. Coleman, for the sum of $1,000, and the defendant has duly appealed to this court. The circumstances of the case and the pleadings of the parties are set out in appellant's statement of the nature and result of the suit, which appellee admits is substantially correct and which we accordingly adopt. It is as follows:

"This is an action instituted by W. T. Coleman, appellee, to recover damages against the Western Union Telegraph Company, appellant, for the sum of $1,500. On May 11, 1924, appellee lived in Weatherford, Tex. His son, Loman Coleman, with his family, lived in Memphis, Tex., and on said date the said Loman Coleman was sick, and his wife, Mary Coleman, delivered and caused to be delivered to the agent of appellant at its office in Memphis, Tex., for immediate transmission and delivery to the appellee, W. T. Coleman, at Weatherford, Tex., a telegram in substance as follows:

" 'Memphis, Texas. 11:15 A. M. May 11, 1924.

" 'W. T. Coleman, Weatherford, Texas.

" 'Loman's condition very serious.

" 'Mary.'

"The message reached Weatherford at 4:51 o'clock, p. m. on said date, and a few minutes thereafter was placed in the proper envelope, addressed to the appellee, W. T. Coleman, the name of the addressee given in the message, and handed to appellant's Weatherford messenger boy for delivery to the appellee, W. T. Coleman. Said messenger boy took the message out upon the streets, and returned to appellant's Weatherford office about 6 o'clock p. m., same date, and reported he was unable to find or locate the appellee, W. T. Coleman, at which time appellant's Weatherford agent prepared and deposited in the post office at Weatherford a card notice, addressed to appellee, W. T. Coleman, notifying him of receipt of said message, and requesting him to call at appellant's Weatherford, Tex., office and receive the message. The appellee, W. T. Coleman, on receipt of said card notice, called at appellant's Weatherford, Tex., office about 9 o'clock on the morning of May 12, 1924, and received the message in question. Appellee, among other things, alleged it was only 250 miles from Weatherford, Tex., to Memphis, Tex., and if the message had been promptly delivered to the appellee, W. T. Coleman, after it was received at Weatherford, Tex., he could and would have gone from Weatherford to Memphis, Tex., immediately by railroad by way of Fort Worth, or by way of automobile across the country, and have reached Memphis, Tex., some time early during the morning of May 12, 1924, and have been with his son, Loman Coleman, several hours before he died. The said Loman Coleman died at his home at Memphis, Tex., at 2:15 o'clock p. m. May 12, 1924. His remains were immediately shipped from Memphis, Tex., to Paris, Tex., for interment, and the body and funeral party reached Fort Worth on the following day, where appellee joined the funeral party and attended the burial of his son at Paris, Tex., from that point.

"For negligence appellee alleged appellant's agents were guilty of negligence: First, in failing to promptly transmit the message from Memphis to Weatherford, Tex.; second, in failing to use proper diligence to find the appellee, W. T. Coleman, and deliver the message to him promptly after it was received at Weatherford, Tex.; third, in failing to send a service message from Weatherford to Memphis, Tex., calling for a better address of the addressee, W. T. Coleman, named in the message, after said message was received at Weathford, Tex. Appellee further alleged that by reason of such negligence on the part of appellant, its agents, servants, and employees, the appellee, W. T. Coleman, was deprived of the opportunity of going to the bedside of his said son and being with him for several hours before he died and at the time of his death—all to his damage as aforesaid.

"Appellant answered appellee's petition in this case by general and special exceptions, general denial, and special pleas of contributory negligence on the part of appellee and the sender of said message and the other agents of appellee so acting in the premises. By way of special plea, appellant, among other things, alleged May 11, 1924, was Sunday, and its office hours at Memphis, Tex., on said date were from 9 to 10 o'clock in the morning and from 5 to 6 o'clock in the evening; and for receiving and delivering messages at said office on week days the office hours were from 8 o'clock in the morning to 6 o'clock in the evening; that its office hours on said date at Weatherford, Tex., were from 9:30 to 10 in the morning and from 4:30 to 6 o'clock in the evening; and for receiving and delivering messages at Weatherford, Tex., on week days its office hours were from 8 o'clock in the morning to 6 o'clock in the evening; that when the message in question was delivered to its Memphis, Tex., agent for transmission to Weatherford, its Weatherford, Tex., office was closed, and, being Sunday, said message in question did not reach Weatherford, Tex., until about 4:51 o'clock p. m., on said date; that when said message was filed with its Memphis, Tex., agent the sender thereof was then notified appellant's Weatherford, Tex., office was then closed on account of the day being Sunday, and would not probably be opened for business until about 5 o'clock p. m. on that date; that the sender of said message was also then and there requested to give appellant's Memphis agent a better address of the appellee, W. T. Coleman, the addressee named in the message, for appellant's use in finding said W. T. Coleman at Weatherford, Tex., and in making delivery of said message to him, but the sender of said message failed and refused to furnish appellant's Memphis, Tex., agent such better address of the appellee, W. T. Coleman, as aforesaid; that when said message reached Weatherford, Tex., the appellee, W. T. Coleman, was unknown to appellant's Weatherford, Tex., agents, and said message failed to give sufficient address or any other information by which the appellee, W. T. Coleman, could be reached by appellant or its Weatherford, Tex., agent—therefore, appellant was unable to deliver the message in question to appellee, W. T. Coleman, promptly on its receipt at Weatherford,

Tex.; that at 6:02 o'clock p. m., same date, appellant's Weatherford, Tex., agent prepared and sent a service message to the Memphis, Tex., office, advising nondelivery of such message and calling for a better address of the appellee, W. T. Coleman; that, the day being Sunday, appellant's Memphis, Tex., office was then closed, and the whereabouts of the sender of such message was then unknown to the appellant's Memphis, Tex., agent—therefore, appellant's Memphis, Tex., agent was unable to find and get in communication with the sender of said message until about 8 o'clock a. m. May 12, 1924, at which time the sender of said message was · again requested to furnish appellant's Memphis, Tex., agent a better address of the appellee, W. T. Coleman, at Weatherford, Tex., but the sender of said message again failed, and refused to furnish appellant's agent such better address of said appellee, W. T. Coleman; that the sender of said message and the appellee, W. T. Coleman, were guilty of negligence in failing and refusing to furnish appellant, its agents, and employees with a better address of the appellee, W. T. Coleman, in Weatherford, Tex., the addressee named in said message; and that such negligence on their part was the direct and proximate and contributing cause of the failure of appellant's Weatherford, Tex., agent and employees to find the appellee, W. T. Coleman, and make delivery of said message to him at an earlier hour.

"The case was tried before the court, with the intervention of the jury, on the 1st day of May, 1925, being submitted on special issues, and resulted in a verdict and judgment in favor of appellee, W. T. Coleman, for the sum of $1,000.

"Motion by appellant for a new trial having been seasonably made and overruled and appeal of this case duly perfected, the case is now before this court for review."

The court, after defining the terms "ordinary care," "negligence," and "proximate cause," submitted the case to the jury upon special issues, to which the jury answered, in substance:

First. That the agents and employees of the defendant company in charge of and operating its office at Weatherford were guilty of negligence in failing to deliver earlier than it was delivered the telegram addressed to plaintiff, advising "Loman's condition very serious," and that such negligence ' was the proximate cause of plaintiff's not going to Memphis and of not having seen his son and been with him while he was still alive.

second. That plaintiff "suffered grief, and other mental pain and distress by reason of not having seen or been with his son before his death."

Third. That if the telegram had been handled and delivered without negligence, the plaintiff would have gone to Memphis in response to the telegram and would have been able to reach his son and been with him before he died."

Fourth. That the person who delivered the telegram in question to defendant's agent at Memphis for transmission to plaintiff at Weatherford, or the party who caused same to be delivered for transmission, was not guilty of negligence in failing to furnish said agent better or more particular address of plaintiff.

Fifth. That "the amount of damages which plaintiff sustained by reason of such mental suffering," as found in special issue No. 2, was $1,000.

In connection with the finding last above noted, the court gave the following:

"In this connection I instruct you that in estimating the plaintiff's damages, if any, you, will take into consideration grief, or other mental pain and distress, if any, suffered by plaintiff on account of not having seen and been with his son before his death, and assess such damages at such sum as you believe will reasonably compensate him therefor. And in this connection I further instruct you that you will not include in the above, or allow any damages for, grief, sorrow, or other mental pain, anguish, or distress which plaintiff suffered by reason of the sickness or death of his son; and in no event will you include in plaintiff's damages anything except what he may have sustained, if any, on account of not having seen and been with his son while still alive. The burden of proof is on the plaintiff to establish by a preponderance of the evidence that one or both of defendant's agents at Weatherford were guilty of negligence in failing to deliver said telegram earlier than it was delivered, and, if he has failed to discharge that burden, you will answer issue No. 1 in the negative."

The court further gave approved charges upon the burden of proof resting on the several litigants, and instructed the jury that they were the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony, etc.

Appellant in several forms seriously attacks the findings of the jury on the issue of contributory negligence of the persons at Memphis delivering the message for transmission in failing to give a better address, but we have concluded that the judgment must be reversed for other reasons, and will not therefore discuss the evidence relating to this issue, nor refer to it other than as appears in the statement of the case we have quoted and as may be thought to be relevant to the conclusions we make. It will be noted that in the jury's findings to issues 2 and 5 that there is no definition of the terms "grief or other mental pain" or "distress," and that in connection with issue No. 5 the jury were authorized to take and to consider "grief," or "other mental pain," and "distress," and to assess such damages as would compensate plaintiff therefor, and there is yet no definition of the term "mental distress." ·In this condition of the court's charge appellant requested the following special instruction, which, omitting formal parts, is as follows:

"In this case you are further charged: Mental anguish is that keen and poignant suffer-

ing which results from some great grief, and in this connection you are instructed that mere disappointment, anger, worry, mental disturbances or injury of feelings does not constitute mental anguish as herein defined, but that, in order for the plaintiff to recover, the jury must find and believe that the plaintiff was caused to suffer intense pain and suffering of mind and body, and that such suffering if any, was the direct result of the failure of the defendant company to deliver said message to the plaintiff within a reasonable time after it was received at Weatherford, if you find that they did fail to so deliver said message to the plaintiff within a reasonable time after it was so received at Weatherford, Tex. And in answering the several special issues submitted to you by the court, you will bear in mind the foregoing and be governed thereby."

[1, 2] We think the special charge was incorrect in that it is a finding of suffering of mind "and body." In cases of the kind, bodily injury is not necessarily essential to the right of recovery, and it cannot be said, therefore, that the court erred in rejecting the special charge. We think, however, that, while defective, it was sufficient to call the court's attention to the subject, and he hence should have given such explanation of the character of mental anguish, distress, or suffering in mind as would have constituted a proper guide to the jury in determining the character of mental anguish or distress for which the law would allow compensation because of the negligence, if any, on the part of the company. See Graves v. Haynes (Tex. Com. App.) 231 S. W. 383, and cases therein cited on that subject.

In 3 Words and Phrases, Second Series, p. 365, it is said: 3 " 'Mental anguish' is a high degree of mental suffering, and not mere disappointment or regret"—citing cases.

In the case of Western Union Telegraph Co. v. McCormick (Tex. Civ. App.) 240 S. W. 697 (writ of error refused) it was held in effect that a charge of the trial court embodying the following definition of mental anguish was correct, to wit:

" 'Mental anguish' is that keen and poignant suffering which results from some great grief, and in this connection you are instructed that mere disappointment, anger, worry, mental disturbances, or injury of feelings, does not constitute mental anguish. * * * "

See, also, W. U. Telegraph Co. v. Finfrock (Tex. Civ. App.) 191 S. W. 181; W. U. Telegraph Co. v. Cowan (Tex. Civ. App.) 271 S. W. 650.

[3, 4] It may be thus seen that it is not every disturbance of the mind arising from the negligent failure to deliver a telegram that will authorize the imposition of damages, but it must be some keen and poignant suffering of mind, exclusive of mere disappointment, anger, worry, and mental disturbance which, in the ordinary and natural sequence of events, results from the negligence charged. By reference to special issues Nos. 2 and 5 and the explanatory instruction accompanying issue No. 5, it will be seen that the jury in assessing damages were not instructed as to the necessary character of grief or mental pain, and not informed that the mental anguish or pain found, if any, must be such as resulted in natural and orderly sequence from the negligence, if any, charged and found by the jury. The jury were told to not "allow any damages for grief, sorrow, or other mental pain, anguish, or distress which plaintiff suffered by reason of the sickness and death of his son." But no other kind of mental distress was excluded, thus opening the door for the jury's consideration of mere disappointment, anger or resentment, not amounting to mental anguish, which plaintiff may have felt because of appellant's failure to deliver the telegram upon the day it was sent, and this may have contributed to the amount of damages found by the jury which appellant has attacked as excessive, and which under the circumstances seems to be large. We conclude, under all the facts of the case, that the court erred in the particulars indicated. A number of other assignments are presented, but in view of the reversal we think they need not be discussed particularly.

[5] The proximate cause of an event must undoubtedly be understood to be that which, in natural and continuous sequence, unbroken by any new, independent cause, produced the event complained of, and without which, as was requested by appellant, the event would not have occurred. There was no evidence, however, of any intervening cause between the negligence complained of and the injury alleged, and we think therefore the court's definition of proximate cause was not incorrect, as applied to the facts of this case. While the evidence on the issues of appellant's negligence and of the contributory negligence of those sending the telegram were very closely contested in the evidence, we deem it unnecessary, in view of the reversal, to discuss the sufficiency of the evidence as called on by appellant's assignments. But for the error discussed, however, we conclude that the judgment should be reversed and the cause remanded.